# Exhibit 2

1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
2 |   Including Professional Corporations
DEREK R. HAVEL, Cal. Bar No. 193464
3 | dhavel@sheppardmullin.com
LAUREN THIBODEAUX, Cal. Bar No. 239997
4 | lthibodeaux@sheppardmullin.com
333 South Hope Street, 43rd Floor
5 | Los Angeles, California 90071-1422
Telephone:   213-620-1780
6 | Facsimile:   213-620-1398

7 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
8 |   Including Professional Corporations
HAYLEY S. GRUNVALD, Cal. Bar No. 227909
9 | hgrunvald@sheppardmullin.com
501 West Broadway, 19th Floor
10 | San Diego, California 92101
Telephone:   619-338-6500
11 | Facsimile:   619-234-3815

12 | Attorneys for MRS. GOOCH'S NATURAL FOODS
MARKET, INC. and WHOLE FOODS MARKET
13 | CALIFORNIA, INC.

14 |

BRODSKY & SMITH, LLC
15 | EVAN J. SMITH, Cal. Bar No. 242352
9595 Wilshire Boulevard, Suite 900
16 | Beverly Hills, California 90212
Telephone:   877-534-2590
17 | Facsimile:   310-247-0160

18 |

Attorneys for Plaintiff KIRBY VELASCO
19 |

20 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

21 | FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| 22  KIRBY VELASCO on behalf of herself and all others similarly situated, | Case No. BC428347 [Complaint Filed: December 21, 2010] |
| 23 | |
|          Plaintiff, | **SETTLEMENT AGREEMENT** |
| 24 | |
|          v. | Hon: Rita Miller |
| 25 | Dept: 16 |
| MRS. GOOCH'S NATURAL FOOD | |
| 26  MARKETS, INC., | |
| 27         Defendants. | |

28 |

1.     **INTRODUCTION**

     1.1    The Settlement agreement ("Agreement") is entered into by and between Mrs. Gooch's Natural Foods Market, Inc., and Whole Foods Market California, Inc. (collectively referred to as "Whole Foods") and Kirby Velasco, individually and on behalf of herself and a class of persons similarly situated (hereinafter referred to as the "Settlement Class" and defined below). Whole Foods and the Plaintiff (individually and on behalf of the Settlement Class) shall individually be referred to as a "Party" and jointly as the "Parties."

     1.2    Whole Foods owns and operates approximately sixty Whole Foods Stores (as defined below) within the State of California. A list of these stores as of March 1, 2011, is attached as Exhibit "1."

     1.3    This Agreement applies to all Whole Foods Stores (as defined below).

     1.4    Named Plaintiff Velsaco is a L-1 incomplete paraplegic and requires a wheelchair for mobility. Named Plaintiff Velasco is a person with a disability as that term is used in the Americans with Disabilities Act. Named Plaintiff alleges she visited and patronized Whole Foods locations within the State of California and experienced discrimination at these locations. Named Plaintiff alleges she intends to return to these markets in the future.

     1.5    The Named Plaintiff brought suit in the Los Angeles Superior Court ("the Court"), Civil Action No. BC428347 (the "Lawsuit"), in which she alleges that Whole Foods violated the Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, Unruh Civil Rights Act, California Civil Code Section 51 *et seq.* ("Unruh Act"), and the California Disabled Persons Act, California Civil Code Section 54 *et seq.* ("CDPA") at its stores in the State of California.

-1-

1.6 The Parties now wish to effect a complete resolution and settlement of all claims, disputes and controversies existing between Whole Foods and Named Plaintiff and the Settlement Class, and to resolve their differences and disputes by settling the Lawsuit.

1.7 The terms of all Exhibits attached hereto are fully incorporated into this Agreement and are an integral part thereof. The terms of this Agreement, where applicable, are fully incorporated into all Exhibits and are, where applicable, an integral part thereof. To the extent that there are any conflicts or inconsistencies between the terms of this Agreement and any of the Exhibits, the terms of the Agreement shall control.

1.8 The benefits and obligations contained in this Agreement and all Exhibits shall inure to and bind the Settlement Class and Whole Foods' subsidiaries, successors and assigns.

1    2.    **No Admission of Liability.** By agreeing to and voluntarily entering into this

2  Agreement, there is no admission or concession by Whole Foods, direct or indirect, express or

3  implied, that Whole Foods Stores are in any way inaccessible or that Whole Foods has violated the

4  America with Disabilities Act, or any other federal, state, or local law, or building code,

5  regulation, order, or rule. Nothing in this Agreement shall operate as an admission by Whole

6  Foods in any context other than within the settlement of this Lawsuit that any particular standard

7  or standards are applicable under the ADA or any other federal or state law to any Whole Foods

8  Store.

9

10    3.    **Definitions.** In addition to the terms defined elsewhere in the Agreement, the

11  following terms shall have the meanings set forth below. Any terms not defined herein shall have

12  the meaning ascribed to them in the ADA and/or the Standards. In the event of a conflict between

13  definitions, the definitions contained in this agreement prevail.

14

15    3.1    "Accessible Route" means an unobstructed path that complies with

16  Section 4.3 of the Standards.

17

18    3.2    "ADA" means Title III of the Americans with Disabilities Act, 42 U.S.C.

19  §§ 12181 *et. seq.*, and its implementing regulations.

20

21    3.3    "Title 24" means the 2007 California Building Code.

22

23    3.4    "Agreement" means this agreement and the exhibits hereto.

24

25    3.5    "Architectural Barrier" is a defined term only for the purpose of allocating

26  monetary relief provided herein and means an impediment to accessibility to persons who are

27  mobility impaired who use wheelchairs for mobility of a structural feature at a Whole Foods Store,

28

-3-

1  including but not limited to, restrooms, store entrances, parking facilities, and any other fixed

2  features within the stores that are regulated by the ADA or Title 24.

3

4          3.6      "Claim Form" means mutually agreed upon documents provided to the

5  Settlement Class which members of the Settlement Class may fill out and return to the Claims

6  Administrator pursuant to Paragraph 12.3 *et seq.* below. The Claim Form is attached hereto as

7  Exhibit "6."

8

9          3.7      "Class Counsel" means Brodsky & Smith, LLC. Class Counsel will

10  perform work on behalf of the Settlement Class after Final Approval is entered as defined by this

11  Agreement.

12

13          3.8      "Costs" means all out-of-pocket expenses reasonably incurred and shall

14  include (but not be limited to) amounts payable to experts.

15

16          3.9      "Damages Amount" means the damages available in a specified amount

17  pursuant to statute or code in the State of California.

18

19          3.10     "Damages Settlement Fund" means a fund consisting of five hundred

20  thousand dollars ($500,000.00) in cash that will be distributed in accordance with the terms of this

21  Agreement and approval by the Court.

22

23          3.11     "Dispute Resolution" means the process described in Paragraph 18 hereof.

24

25          3.12     "Effective Date" means the date upon which this Agreement becomes final

26  and non-appealable. The Agreement becomes final and non-appealable upon the expiration of any

27  time to appeal or the exhaustion of any timely filed appeals by an objector or a party.

28

-4-

1        3.13    "Final Approval" means the approval of this Agreement by a Los Angeles

2 Superior Court Judge by signature of an order in a form substantially similar to that submitted by

3 the Parties that, among other things, attaches this Agreement as an exhibit, retains jurisdiction for

4 the Court for the Term of this Agreement in order to enforce this Agreement, and has become final

5 and non-appealable. The Proposed Final Approval Order and Judgment is attached hereto as

6 Exhibit "7."

7

8        3.14    "Named Plaintiff" means Kirby Velasco.

9

10        3.15    "Notice" means the procedure for notifying the Settlement Class of this

11 Agreement and its terms which will be published as set by the Court as part of the Preliminary

12 Approval process. A Proposed Notice Plan is attached hereto as Exhibit "3." A Long Form

13 Notice is attached hereto as Exhibit "4." A Summary Form Notice is attached hereto as Exhibit

14 "5."

15

16        3.16    "Notice Deadline" means the deadline for publishing notice to be set by the

17 Court as part of the Preliminary Approval process.

18

19        3.17    "Opt-Out Statements" means those statements sent to the Claims

20 Administrator by Settlement Class Members pursuant to Paragraph 13 of this Agreement, whereby

21 Settlement Class Members opt out of this Agreement.

22

23        3.18    "Other Barrier" means non-Architectural Barriers specifically prohibited by

24 the Standards, including, (1) improper positioning of shelves, tables, chairs, vending machines,

25 display racks, and other furniture as may be required by the Standards; (2) improper placement of

26 public telephones if required by the Standards; (3) non-operable flashing alarm lights, where

27 required by the Standards; (4) inaccessible door hardware that does not comply with the

28 Standards; (5) inadequate or missing insulation on lavatory pipes under sinks per the requirements

-5-

1   of the Standards; (6) the lack of designated accessible parking spaces if required by the Standards;

2   and (7) the lack of proper accessibility signage as may be required by the Standards.

3

4         3.19   "Parking Lots" shall mean parking facilities, parking spaces, parking lots

5   and exterior paths of travel, including the Accessible Route to a Whole Foods Store therefrom.

6

7         3.20   "Preliminary Approval" means the initial approval by the Court of the terms

8   of this Agreement, which shall occur prior to any notice being provided in accordance with

9   Paragraph 19 and 20 of this Agreement. The Proposed Order for Preliminary Approval is attached

10   hereto as Exhibit "2."

11

12         3.21   "Settlement Class" means the class of all persons who at any time from

13   December 21, 2007, through the Term of this Agreement, were mobility impaired, used, use or

14   will use wheelchairs or other devices for mobility, and who patronized any Whole Foods Store or

15   who allege they would or would have patronized at one or more Whole Foods Store but for

16   allegedly being denied on the basis of disability the full and equal enjoyment of the goods,

17   services, facilities, privileges, advantages, or accommodations of such Whole Foods Store(s).

18

19         3.22   "Settlement Class Member" means any member of the Settlement Class.

20

21         3.23   "Standards" means the Standards for Accessible Design, 28 C.F.R. Part 36,

22   Appendix A. The version of the Standards in existence at the time of Final Approval of this

23   Agreement shall be the version to which this term refers except that, if amendments to or a

24   different version of the Standards are adopted by the Department of Justice, that different version

25   shall govern any actions taken or required to be taken after the effective date thereof, including all

26   conventional building industry tolerances allowed by the Standards. Whole Foods shall not be

27   required to make alterations to any work it has done pursuant to this Agreement prior to that

28   effective date.

SETTLEMENT AGREEMENT

1           3.24    "Statutory Minimum Damages" means any minimum damages available in

2   a specified amount by operation of or pursuant to the following state statutes or codes that may be

3   recovered regardless of the amount of actual damages proved:  California — Cal. Civil Code

4   §§ 52, 54.3..

5

6           3.25    "Structurally Impracticable" means only those rare circumstances when the

7   unique characteristics of the building's structure or terrain prevent the incorporation of

8   accessibility features.

9

10          3.26    "Subsequently Acquired Store" means any facility that begins operation as a

11  Whole Foods Store after Final Approval of this Agreement.

12

13          3.27    "Subsequently Relinquished Store" means any facility that was in operation

14  at the time of Final Approval of this Agreement, but which is closed, sold, or otherwise becomes

15  outside the control of Whole Foods after Final Approval of this Agreement.

16

17          3.28    "Technically Infeasible" means with respect to an alteration of a building or

18  a facility, that has little likelihood of being accomplished because existing structural conditions

19  would require removing or altering a load-bearing member which is an essential part of the

20  structural frame; or is infeasible because other existing physical or site constraints prohibit

21  modification or addition of elements, spaces, or features which are in full and strict compliance

22  with the minimum requirements for new construction and which are necessary to provide

23  accessibility.

24

25          3.29    "Whole Foods Stores" means all Mrs. Gooch's Natural Foods Market, Inc.

26  and Whole Foods California Market, Inc. owned locations within the State of California which

27  opened for business on or before preliminary approval of this Settlement.  Whole Foods Stores are

28  set forth on the attached Exhibit 1 and the term Whole Foods Store shall include all elements and

-7-

1  facilities on the site of each Whole Foods Store that are open to and available for use by the public

2  including but not limited those Parking Lots that Whole Foods owns or leases or over which

3  Whole Foods has a right of alteration or control.

4

5      4.  **Conditions Precedent**. This Agreement shall be conditioned upon and shall be

6  effective only upon the occurrence of all of the events set forth in this Paragraph 4.

7

8      4.1  Class Counsel shall request preliminary approval of this Settlement

9  pursuant to the Court's scheduling order providing for a hearing date on said preliminary approval

10  motion.

11

12      4.2  Class Counsel shall move for, and Whole Foods shall not oppose, an Order

13  Granting Preliminary Approval of this Agreement, Preliminarily Certifying the Class for

14  injunctive relief for Settlement Purposes Only, Preliminarily Certifying the Class for Damages for

15  Settlement Purposes Only, Preliminarily Enjoining potential Settlement Class Members from

16  Asserting Any Claims to be Released by the Agreement, and Approving Issuance of Notice in

17  Accordance with the Procedures for Providing Notice Submitted by the Parties and such motions

18  are granted by the Court. The Proposed Order for preliminary approval is attached hereto as

19  Exhibit 2.

20

21      4.3  Upon Preliminary Approval of this Agreement and approval of the Notice

22  and the procedures for providing notice, Notice shall be provided to the Settlement Class in

23  accordance with the procedures for providing Notice approved by the Court pursuant to

24  Paragraph 19 and 20 below. The Proposed Notice Plan is attached hereto as Exhibit 3. The

25  Detailed Long Form Notice is attached as Exhibit 4. The Summary Form Notice is attached

26  hereto as Exhibit 5. Notice shall be included in the costs of administration and such costs shall be

27  taken out of the Damages Settlement Fund.

28

-8-

29

1    4.4    A Fairness Hearing for Final Approval of the Settlement shall be held in
2  accordance with Paragraph 18 and Paragraph 19 below.

3

4    4.5    The Court shall grant Final Approval of this Agreement, enjoin Settlement
5  Class Members from bringing any claims released by this Agreement, and enter Judgment in
6  accordance with the terms set forth herein after a Fairness Hearing has been conducted, and all
7  such orders and approvals have become final and non-appealable. The Judgment shall finally
8  resolve all issues raised in this proceeding. The Proposed Final Order and Judgment is attached
9  hereto as Exhibit "7."

10

11    5.    **Term of Agreement**. This Agreement shall have a term ("Term") that expires
12  thirty (30) months after the Court grants Final Approval of this settlement.

13

14    6.    **Whole Foods Stores to Comply with the Standards**.

15

16    6.1    Subject to all of the other provisions of this Paragraph and prior to the
17  expiration of the Term, Whole Foods agrees to bring into compliance with the Standards or
18  Title 24 of the California Code of Regulations, to the extent that such regulations relate to
19  accessibility for people with disabilities who are mobility impaired and use a wheelchair for
20  mobility, whichever standard requires greater accessibility. To the extent that the following
21  provisions of Paragraph 6 use the terms the "Standards," that term shall be deemed to mean the
22  "Standards and/or Title 24 of the California Code of Regulations" for the purposes of Whole
23  Foods Stores.

24

25    6.2    In no event will Whole Foods be required to do more than comply with the
26  Standards.

27

28

1          6.3     Notwithstanding the Standards, Whole Foods' compliance with this

2  Paragraph 6 shall be measured in accordance with industry tolerances for field conditions.

3

4          6.4     Departures from particular technical and scoping requirements of the

5  Standards by the use of other designs and technologies are permitted where the alternative designs

6  and technologies used will provide substantially equivalent or greater access to and usability of the

7  facility.

8

9          6.5     Whole Foods is not required to bring any element in any Whole Foods Store

10  into compliance if doing so would be Structurally Impracticable.

11

12          6.6     Whole Foods is not required to bring any element into compliance if doing

13  so would be Technically Infeasible, provided that where compliance is Technically Infeasible,

14  Whole Foods shall provide access to the maximum extent feasible.

15

16          6.7     Parking:  This section applies to Parking Lots owned or controlled by

17  another entity or used in common with a Whole Foods Store.  Notwithstanding any other

18  provisions hereof to the contrary, Whole Foods' obligation to inspect, remediate, and bring

19  Parking Lots into compliance with the ADAAG and Title 24 will be limited to those Parking Lots

20  which Whole Foods has exclusive authority and control.  Each Parking Lot that is attached,

21  affixed, joined or connected or other retail or business establishments over which Whole Foods

22  does not control, or which is shared by a Whole Foods Store and a Whole Foods Store's

23  neighboring tenant(s), shall be deemed outside of a Whole Foods Store's exclusive authority and

24  control and shall not be subject to the terms and conditions contained herein.

25

26          6.7.1    For Parking Lots that are outside the exclusive authority and

27  control of Whole Foods Stores, Whole Foods shall make a good faith effort to have the other

28

-10-

31

1   entity make the remediations to each such Parking Lot appurtenant to the Whole Foods Stores

2   listed on Exhibit 1.

3

4          6.8      When renegotiating with a current landlord regarding a lease applicable to

5   any Whole Foods Store, i.e., negotiations regarding a renewed or existing leases, Whole Foods

6   shall make good faith efforts to include term(s) that require that a site, building, premises or

7   facility, or part thereof which does not fall within the exclusive control of Whole Foods as

8   described in Sections 6.7 and 6.7.1, above, be modified by the landlord, at the landlord's expense,

9   sufficient to achieve compliance with the Standards for the areas, specifically including areas over

10   which the landlord has exclusive authority and control, including, but not limited to, the entrance,

11   Parking Lots, exterior and interior paths of travel, and shared restrooms (if any).

12

13          6.8.1    In the event Whole Foods is renegotiating with a current landlord

14   regarding a lease for any Whole Foods Store and such lease provides Whole Foods with

15   exclusive authority and control over such Whole Foods Store's entrance, Parking Lot, exterior

16   and interior paths of travel and shared restrooms (if any), Whole Foods shall make good faith

17   efforts to ensure that the lease provides that Whole Foods or any subtenant may make

18   modifications to the premises necessary to comply with the Standards if the landlord fails to do

19   so, and that for any structural changes, the landlord will not withhold consent unreasonably.

20   Whole Foods shall not be liable for any failure by the landlord to comply with any of its

21   obligations under the ADA, notwithstanding such good faith efforts.

22

23          6.9      Elements or facilities that are intended for and marked for use by Whole

24   Foods Personnel only are not covered by this Agreement.

25

26          6.10     Commencing on the date of Final Approval of this Agreement, Whole

27   Foods shall have a twelve (12) month period in which to survey the Stores and perform other tasks

28   necessary prior to the commencement of work on the Stores, provided, however, that Whole

-11-

1 | Foods is not obligated to complete the surveys of all the Whole Foods Stores during such period.
2 | Whole Foods will initiate the process of interviewing and retaining contractors concurrently with
3 | the conducting of the surveys in order to ensure that the modifications that will be undertaken
4 | pursuant to this Agreement will occur as efficiently and expeditiously as possible and within the
5 | time prescribed by this Agreement.

6

7 |       7.       **Verification of Compliance.**

8

9 |               7.1       Whole Foods shall institute an ADA Evaluation and Remediation Program,
10 | whereby it will (1) hire an independent third party evaluator ("Whole Foods' Expert") to evaluate
11 | (a) the Accessibility Routes within the Whole Foods Stores and (b) where the remodeling has been
12 | completed by the expiration of the Term of Agreement, compliance with the Standards, and
13 | (2) require the Whole Foods Stores to make remediations that will make these areas compliant
14 | with the Standards.

15

16 |               7.2       Whole Foods Expert discussed in Paragraph 7.1 above, in conjunction with
17 | the Settlement Class' expert, Frank Ferreiro, shall prepare an Evaluation Report form and
18 | instructions for use by Whole Foods Stores, within thirty (30) days of the preliminary approval of
19 | this agreement, or as soon as is practicable thereafter. Whole Foods' Expert, in consultation with
20 | the Plaintiff, will provide advice and assistance in connection with the evaluation and remediation
21 | program. Whole Foods will consult with the Plaintiff with regard to the evaluation and
22 | remediation program. From time to time, in consultation with the Plaintiff, Whole Foods may
23 | select, retain, and train other or additional individuals to perform the evaluations.

24

25 |               7.3       Whole Foods shall require Whole Foods' Expert to complete fully the
26 | Evaluation Report for each Whole Foods Store to determine whether Architectural or
27 | non-Architectural Barriers to access or violations of the Standards exist. Whole Foods and
28 | Plaintiff shall pay their respective costs developing and implementing the Evaluation Program,

-12-

1 | i.e., Plaintiff will be responsible for her Expert, and Whole Foods will be responsible for Whole
2 | Foods' Expert and Whole Foods Store compliance.

3

4 |    7.4 Whole Foods' Expert shall conduct the ADA evaluation coincident with the
5 | time frame established for the remainder of the Remodeling Program. All ADA evaluations will
6 | be completed within the Term of this Agreement. Whole Foods' Expert shall complete the
7 | Evaluation Report and promptly deliver such Report to Whole Foods headquarters along with
8 | other submissions related to the Remodeling Program. Whole Foods will provide the Evaluation
9 | Reports to Plaintiff on a quarterly basis. The parties will work in good faith to schedule a
10 | mutually convenient time for Plaintiff to conduct a visual inspection and review/audit of any of the
11 | Whole Foods Stores.

12

13 |    7.5 Whole Foods shall review the remediations made under the Remodeling
14 | Program within a reasonable period after their completion, in consultation with Whole Foods'
15 | Expert. Upon completion, Whole Foods shall also require that Whole Foods' Expert complete a
16 | final inspection of the Whole Foods Stores with respect to compliance with the Standards. Said
17 | inspection may include photographs of all applicable portions of the Whole Foods Store. Whole
18 | Foods shall retain the completed Certifications of ADA Compliance and any photographs (or
19 | electronic versions thereof) for the Term of this Agreement. These Certifications of ADA
20 | Compliance and photographs shall be provided to the Plaintiff's counsel quarterly until complete.

21

22 |    7.6 For remediation that is outside the authority and control of Whole Foods as
23 | set forth in Sections 6.7 and 6.7.1 above, such as parking, exterior routes, and shared restrooms
24 | owned or controlled by another entity or used in common with a Whole Foods Store, Whole Foods
25 | will make a good faith effort to have the other entity make the remediations as listed on the
26 | Evaluation Report, as provided above.

27

28

-13-

1    8.   **Permits and Consent.**

2

3        8.1    Whole Foods may be required to obtain building or other permits or consent

4   for some of the measures required to comply with Paragraph 6 or Paragraph 7.  Whole Foods shall

5   use its reasonable best efforts to obtain such permits or consent, including drafting applications in

6   good faith to enhance the possibility of approval.

7

8        8.2    If a permit for a measure required by Paragraph 6 or Paragraph 7 is issued

9   on a conditional basis or is denied outright, Whole Foods shall notify Class Counsel of the

10   conditions or denial within 30 days of the denial.

11

12   9.   **Subsequently Relinquished Stores**

13

14        9.1    Each Subsequently Relinquished Store shall cease to be subject to only the

15   remodeling terms of this Agreement as of the date it becomes a Subsequently Relinquished Store.

16   Nothing herein will prohibit Whole Foods from selling, closing or otherwise terminating

17   operations at any location.  If a Subsequently Relinquished Store has not yet been brought into

18   compliance with Paragraph 6 and Paragraph 7 hereof at the time of its closing, it will not affect the

19   Release of Claims as identified in Paragraph 20 et seq. below.

20

21

22

23

24

25

26

27

28

-14-

35

1    10.    **Maintenance of Access**.  Whole Foods agrees to maintain in operable and working

2    condition those elements of Whole Foods Stores that are covered by this Agreement and its

3    Exhibits in the condition required by this Agreement and its Exhibits, provided, however, that

4    nothing in this Agreement shall prohibit isolated or temporary interruptions in service or access

5    due, for example, to maintenance or repair.

6

7    11.    **Monitoring of Compliance.**

8

9    11.1    In addition to Class Counsel or Class Counsel's expert's duties provided for

10   in ¶ 7 regarding verification procedures, Class Counsel or Class Counsel's expert shall be entitled

11   to visit any Whole Foods Store at any time during the Term with at least fifteen (15) days notice

12   for the purpose of evaluating compliance with Paragraph 6.  The parties agree to schedule

13   mutually convenient times for said evaluation.

14

15   12.    **Monetary Relief and Claims Procedure.**

16

17   12.1    Monetary Settlement Funds

18

19   12.1.1  To satisfy and settle all claims for damages (excepting personal

20   injury claims resulting from physical injury) of the Settlement Class, Whole Foods will pay

21   Five Hundred Thousand Dollars ($500,000.00) in cash, comprising the Damages Settlement

22   Fund, to be allocated among the Settlement Class in the manner set forth in Paragraph 12.4.3.2.

23

24   Whole Foods will also pay the Named Plaintiff any court approved

25   incentive award up to an amount of Ten Thousand Dollars ($10,000.00) (collectively referred to as

26   the "Named Plaintiff Fund").  This amount will be paid from the Damages Settlement Fund and as

27   set forth in Paragraph 12.4.3 below.

28

-15-

1    12.1.2  Creation of Damages Settlement Fund.

2

3    12.1.3  Within ten (10) days after the granting of Final Approval of this

4  Agreement, Whole Foods shall transfer to an interest-bearing account (the "Account") for the

5  benefit of the Class the sum of Five Hundred Thousand Dollars ($500,000.00) representing the

6  cash portion of the Damages Settlement Fund.  In addition, within ten (10) days after the

7  granting of Final Approval of this Agreement, Whole Foods shall transfer to a second interest-

8  bearing account (the "Second Account") the Court awarded amount of Plaintiff's Award of

9  Attorneys' Fees and Costs, that shall not exceed the sum of Two Hundred and Fifty Thousand

10  Dollars ($250,000.00), for the benefit of Class Counsel.  Any interest earned on the Account

11  and the Second Account shall inure to the Class, and Class Counsel, respectively.  To the extent

12  the Final Approval Order is reversed, or modified on appeal, the Class and Class Counsel will

13  only receive the reduced or increased pro rated share of the interest earned based upon the

14  reversed or modified amount to be paid.  Within fourteen (14) calendar days following the

15  Effective Date, Whole Foods and/or the Claims Administrator shall distribute the funds in the

16  Account and Second Account pursuant to this Settlement Agreement.

17

18    12.1.4  Whole Foods shall retain an independent claims administrator

19  (the "Claims Administrator"), who is mutually selected by the Parties, to (1) distribute Notice

20  and Claim Forms; (2) receive and track returned Claim Forms and opt-out Statements;

21  (3) obtain supplemental information from Settlement Class Members who complete and return

22  Claim Forms (the "Claimants"), as necessary; (4) receive and forward to the Parties and the

23  Court Opt-Out Statements and objections; (5) verify the validity of each Claim Form submitted

24  and certify those Settlement Class Members who are Eligible Claimants as provided in

25  Paragraph 13.3, below, (6) maintain, administer and distribute awards from the Damages

26  Settlement Fund; and (7) perform such other duties as agreed by the Parties that are necessary

27  to carry out the provisions of the Agreement.  The Claims Administrator shall be an

28  organization or entity experienced and qualified in the administration of class action monetary

-16-

1     settlement distribution and/or claims proceedings. All reasonable fees, expenses, and costs

2     incurred by the Claims Administrator shall be taken from the Damages Settlement Fund.

3     Whole Foods shall provide the Claims Administrator check-writing authority on the Account as

4     necessary and appropriate to satisfy its responsibilities under this Agreement.

5

6             Incentive Award: The Named Plaintiff reserves the right to apply to the

7     Court for an incentive award up to an amount that will not exceed $10,000.00 of which will be

8     paid by Defendants out of the Damages Settlement Fund, subject to Court approval. Within

9     fourteen (14) calendar days of the Effective Date of this Agreement, the Claims Administrator

10     shall make the Court approved incentive award not to exceed $10,000 to the Named Plaintiff from

11     the Damages Settlement Fund.

12

13             The Claims Administrator shall mail, return receipt requested, a check in

14     the amount specified in this Paragraph and a 1099 form to the Individual Named Plaintiff.

15

16        12.2     Eligibility for Payments from the Damages Settlement Fund. To be an

17     "Eligible Claimant" and be eligible for an award from the Damages Settlement Fund, a Settlement

18     Class Member must satisfy each and all of the following criteria;

19

20             12.2.1 Return a completed "Claim Form" (in a form substantially similar

21     to that attached hereto as Exhibit "6") that is postmarked by no later than 21 days prior to the

22     Final Approval hearing ("Claim Filing Deadline");

23

24             12.2.2 State under oath that he/she is an individual who is mobility

25     impaired, used or uses a wheelchair for mobility, who has, pursuant to California Civil Code

26     Section 55.56 either: (1) personally encountered a violation on a particular occasion at a Whole

27     Foods Store located in the State of California between the December 21, 2007, and the deadline

28     for Opt-Out Statements or (2) has been deterred from accessing a Whole Foods Store located in

-17-

1   the State of California between the December 21, 2007, and the deadline for Opt-Out
2   Statements by: a) having actual knowledge of a violation(s) that prevented or reasonably
3   dissuaded access and b) the violation(s) would have actually denied the individual full and
4   equal access.

6               12.2.3  State under oath the approximate location(s) of the Whole Foods
7   Store(s) that he or she went to or was deterred from accessing, including at a minimum the
8   city(ies) which the Store(s) are located and the alleged barrier deterring access;

10              12.2.4  Not previously have released his/her claims against Whole Foods;
11  and

13              12.2.5  Not have validly opted out of any claim for damages as permitted
14  by Paragraph 13 of this Agreement.

16          12.3    Claims Determination Process

18              12.3.1  Distribution of Claim Forms.  Commencing with the Notice
19  Deadline set by the Court and continuing through the deadline to file a claim ("Claim-Filing
20  Deadline") provided in Paragraph 12.2.1 herein, the Claims Administrator shall mail a Claim
21  Form to each potential Settlement Class Member who makes a written or telephone request
22  therefor.  For any request for a Claim Form received prior to fourteen (14) days before the
23  Claim-Filing Deadline, the Claims Administrator shall mail the Claim Form within seven (7)
24  days after receiving a written or telephone request.  Thereafter, and until the Claim-Filing
25  Deadline, the Claims Administrator shall mail a Claim Form within three (3) business days
26  after receiving a written or telephone request for a Claim Form from a potential Settlement
27  Class Member.  Any written request for Claim Forms received by Class Counsel or Whole
28  Foods' counsel shall be forwarded to the Claims Administrator by electronic mail or facsimile

-18-

within forty-eight (48) hours (excluding weekends and holidays) of its receipt, and within three (3) business days of receipt by the Claims Administrator, the Claims Administrator shall mail a Claim Form to the potential Claimant. Any potential Claimant who contacts Class Counsel or Whole Foods' counsel by telephone and requests a Claim Form shall immediately be referred to the Claims Administrator.

12.3.2  Filing of Completed Claims Forms.  All claims for monetary payment from the Damages Settlement Fund shall be made in writing using the Claim Form. All Claim Forms must be signed by the Claimant under penalty of perjury.  Each potential Settlement Class Member, including minors, must submit his/her own Claim Form.  A parent, legal guardian or next of kin may complete and sign a Claim Form on behalf of a minor.  A designated representative may complete and sign a Claim Form on behalf of a Claimant who, because of disability, cannot sign his or her name.  If a potential Settlement Class Member experienced more than one discriminatory Incident, all such incidents must be detailed on one (1) Claim Form.  All Claim Forms must be mailed to the Claims Administrator and postmarked by no later than twenty-one days before the Final Fairness hearing set by the Court.

12.3.3  Review of Claim Forms.  The Claims Administrator shall initially review all Claim Forms to determine if the form is filled out completely and is signed properly. If the Claim Form is incomplete or is not signed properly, the Claims Administrator shall return the Claim Form to the Claimant and the Claimant shall be given thirty (30) days from the date of that mailing within which to return to the Claims Administrator the Claim Form completed and/or signed properly.  The failure of a Claimant to complete, sign and return his or her Claim Form within thirty (30) days shall result in a denial of his or her claim.

12.3.4  Approval of Claims.  The Claims Administrator shall then conduct a review of all Claims Forms to determine whether they present valid claims in accordance with the terms and provisions of this Agreement.  All Claimants whose claims are

-19-