1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FRANCISCA MORALEZ,

        Plaintiff,

    v.

WHOLE FOODS MARKET, INC. ET AL.,

        Defendants.

_____/

No. C 12-01072 CRB

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS**

Francisca Moralez, who is wheelchair-bound due to disability, brought this putative class action against a Whole Foods store in Oakland and the lessor of the building Whole Foods occupies ("Bond"), alleging that various features of the store's design create access barriers in violation of federal and state disability discrimination statutes. Whole Foods and Bond now move to dismiss Moralez' suit, arguing that Moralez' claims were all precluded or released by the final settlement and judgment in a similar class action suit (Velasco) finalized earlier this year in state court.

**BACKGROUND**

    **A. Moralez' Suit**

Moralez' First Amended Complaint ("FAC") (dkt. 18) alleges that she is disabled within the meaning of the relevant statutes due to rheumatoid arthritis "and other physically disabling condition[s]" that impair her mobility such that she requires a motorized wheelchair. FAC ¶¶ 1, 5. Defendants Whole Foods Market California, Inc. ("Whole

Foods"), Bond CC Oakland LLC, and John Does 1-10 are the owners, operators, lessors, and lessees of the Whole Foods store at 230 Bay Place, Oakland, California (the "Bay Place Whole Foods").  FAC ¶¶ 5, 7.

Moralez says that on several occasions within two years before filing this suit on March 2, 2012, she visited the Bay Place Whole Foods and encountered the following problems:

- difficulty locating a "van accessible" disabled parking spot due to an insufficient number of such spots, poor lot configuration, and improper signage, FAC ¶ 11;
- inability to reenter her van after parking in a designated "accessible" space because of  inadequate room for her wheelchair ramp between her van and a car that parked in an adjacent space while Moralez was in the store, requiring her to enlist the help of strangers to pull her van out of the parking space, FAC ¶ 11;
- near-collisions with backing vehicles due to the lack of an appropriate path of travel for wheelchairs between parking spaces and the store entrance, FAC ¶ 12;
- difficulty opening an excessively heavy restroom door, FAC ¶ 12;
- difficulty using improperly located and configured credit card readers at the cash register, FAC ¶ 12;
- lack of proper interior accessible paths of travel, FAC ¶ 13; and
- improperly high counters, FAC ¶ 13.

Moralez alleges that she personally suffered "difficulty, discomfort and embarrassment[,] . . . [p]hysical, mental, and emotional and emotional damages" after encountering these problems.  FAC ¶¶ 12, 13.  She also says that her "representative" conducted an independent investigation of the store and discovered multiple unspecified additional accessibility problems, which apparently Moralez did not herself confront during her visits.  FAC ¶ 14.

The complaint lists three causes of action: (1) Cal. Health & Safety Code  §§ 19955 *et seq.* and the Disabled Persons Act, Cal. Civil Code §§ 54 *et seq.* (damages and injunctive relief);  (2) The Unruh Act, Cal. Civil Code §§ 51 *et seq.* (damages and injunctive relief); and (3) The Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (damages and injunctive relief).  FAC at 4, 12, 14.  She seeks an injunction requiring Defendants to fix the alleged accessibility problems, damages (statutory, general, and treble), and attorneys' fees.  FAC at 17-18.

**United States District Court**
For the Northern District of California

1    Defendant Whole Foods (joined by Defendant Bond, dkt. 21) has moved to dismiss

2    (dkt. 20), arguing that Moralez' suit is barred as *res judicata* in light of a class-action

3    settlement involving Whole Foods that was recently incorporated into a judgment in state

4    court.

5        **B. The <u>Velasco</u> Action**

6        Kirby Velasco filed a class-action suit in California Superior Court against (among

7    other defendants) Whole Foods on December 21, 2009,  <u>see</u> <u>Velasco v. Mrs. Gooch's Natural</u>

8    <u>Foods Market, Inc.</u>, No. BC428347 (Cal. Super. Ct. filed Dec. 21, 2009), alleging violations

9    of state and federal disability access laws.  <u>See</u> Ex. 1 to Defendant's Request for Judicial

10   Notice ("RJN") (Second Amended Class Action Complaint) ("Velasco Compl.").[1]  Velasco

11   alleged that she was an "L-1 incomplete paraplegic" who required a wheelchair to ambulate,

12   making her disabled under the relevant legal definitions.  Velasco Compl. ¶ 15.

13       Velasco's complaint said that she confronted accessibility problems during a trip to a

14   Whole Foods store in Long Beach, California; specifically, the store "did not have fully

15   accessible parking or a fully accessible restroom."  Velasco Compl. ¶ 34.  Velasco further

16   alleged that she retained an independent investigator who returned to that store (and others)

17   and discovered multiple accessibility barriers, Velasco Compl. ¶ 36, including:

18   • lack of a required number of van accessible parking spaces, Velasco Compl. ¶ 38(1);
19   • no accessible parking signage, Velasco Compl. ¶ 38(2);
     • no van accessible parking signage, Velasco Compl. ¶ 38(3);
20   • no accessible aisles in accessible parking spaces, Velasco Compl. ¶ 38(4);
     • no accessible aisles in van accessible spaces, Velasco Compl. ¶ 38(5); and
21   • a restroom "door force [of] over 5 lbs." that was not accessible, Velasco Compl. ¶ 38(11).

22       Velasco's complaint set out four causes of action: (1) The Unruh Act, Cal. Civil Code

23   §§ 51 *et seq.*; (2) The California Disabled Persons Act, Cal. Civil Code §§ 54 *et seq.*; (3) Cal.

24   Civil Code §§ 55 *et seq.*; and (4) The Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et*

25   *seq.*  <u>See</u> Velasco Compl. at 12-15.  She requested declaratory and injunctive relief, as well

26   as damages and fees.  Velasco Compl. at 19.

27

28   ─────────────────
     [1] As discussed in more detail below, these materials are properly subject to judicial notice.

Following discovery and mediation, the <u>Velasco</u> parties entered into a settlement agreement, <u>see</u> Ex. 2 to RJN (Settlement Agreement) ("Velasco Agreement"), which the court preliminarily approved on September 15, 2011.  <u>See</u> Ex. 6 to RJN (Preliminary Approval Order).  As ultimately approved, the settlement class consisted of

> all persons who at any time from December 21, 2006 through the Term of the Settlement Agreement, were mobility impaired, used, use or will use wheelchairs for mobility, and who patronized any Whole Foods Store in California or who allege they would or would have at one or more Whole Foods Stores in California but for allegedly being denied on the basis of disability the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at any of the "Whole Foods stores owned or operated by Mrs. Gooch's Natural Foods Market Inc. and/or Whole Foods Market California, Inc., in California.

Ex. 7 to RJN  ¶ 1 (Final Approval Order) ("Velasco Judgment").  Under the settlement, Whole Foods agreed to:

- alter its California stores to comply with federal and state disability access laws within thirty months of the court's final approval of the settlement, Velasco Agreement ¶¶ 3.23,  6.1, and obtain a certificate of compliance from a certified specialist attesting to the state and federal compliance, Velasco Agreement ¶¶ 7.1-7.6;
- pay $500,000 to a damages settlement fund for the benefit of the class members, Velasco Agreement ¶ 12.1.3; and
- establish a $250,000 attorneys' fees fund for class counsel, Velasco Agreement ¶ 12.1.3.

Class members received notice and an opportunity to object to the terms of the settlement or opt out of the settlement class.  <u>See</u> Ex. 3 to RJN (Notice Plan) ("Velasco Notice Plan").  Notice was provided by:

- maintaining copies of a long form notice, available upon request, at each Whole Foods store, Velasco Notice Plan ¶ 1;
- mailing the long form notice directly to 32,465 California addresses provided by a marketing company as being addresses of people who self-identify as having a mobility impairment or living with someone with a mobility impairment, Velasco Notice Plan ¶ 3;
- posting the long form notice online at www.disabledonline.com, Velasco Notice Plan ¶ 4;
- mailing the summary and long form notice to 109 disability organizations in California and requesting circulation to their membership, Velasco Notice Plan ¶ 5;
- posting the summary notice form at each Whole Foods store on the "Community Bulletin Board," Velasco Notice Plan ¶ 6;
- publishing the summary form in the following newspapers on four consecutive Sundays: The Los Angeles Times, The Orange County Register, The San Diego Union Tribune, The San Francisco Chronicle, The Sacramento Bee, and The San Jose Mercury News; publishing in the following two magazines

geared toward individuals with wheelchairs: Ability magazine, and Quest magazine, Velasco Notice Plan ¶ 7;

- creating a website detailing the settlement at http://cawholefoodssettlement.com, Velasco Notice Plan ¶¶ 2, 9; and
- including in the summary form notice a sentence in Spanish explaining how to obtain a copy of the full notice in Spanish, Velasco Notice Plan ¶ 7.

The court held three final approval hearings before approving the settlement and incorporating the Velasco Agreement into a final judgment on February 14, 2012. Velasco Judgment at 1.  The final approval order found that the notice provided was "the best notice practicable under the circumstances and fully complies with each of the requirements of [state law] and the Constitution of the United States." Velasco Judgment ¶ 5.

The Velasco Agreement, as incorporated into the Velasco Judgment, included a list of Whole Foods stores covered by the settlement, including the Bay Play Whole Foods, and defined the stores to include "all elements and facilities on the site of each Whole Foods Store that are open to and available for use by the public including but not limited to those Parking Lots that Whole Foods owns or leases or over which Whole Foods has a right of alteration or control." Velasco Agreement ¶ 3.29.

The final judgment also released

> [a]ll claims for injunctive relief and all claims for damages other than personal injury claims as a result of physical injury, alleged in the Action or which could have been made in the Action based on allegations that . . . Whole Foods Market California, Inc. violated any state or federal laws, rules or regulations relating to discrimination on the basis of mobility disability or accessibility of any and all of its stores or of any and all of its goods, services, facilities, privileges, advantages, or accommodations therein.

Velasco Judgment ¶ 9.  The settlement agreement included more detailed specifications of the claims released by class members.  See Velasco Agreement ¶¶ 20.1.2, 20.2.2, 20.2.3.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-2000 (9th Cir. 2003).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "Detailed factual

1    allegations" are not required, but the Rule does call for sufficient factual matter, accepted as

2    true, to "state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,

3    678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 555 (2007)).

4    **<u>DISCUSSION</u>**

5    Defendants argue that Moralez' claims are all either precluded or barred by release in

6    light of the <u>Velasco</u> action.  Moralez has six responses: (1) Defendants' arguments are

7    premature and otherwise procedurally inappropriate; (2) Moralez' complaint alleges physical

8    injuries, and claims for physical injuries were explicitly excluded from the <u>Velasco</u> judgment

9    and release; (3) the <u>Velasco</u> settlement excluded from its injunctive relief provisions parking

10   lots that are under joint control, and the lot at the Bay Place Whole Foods is jointly

11   controlled by Whole Foods and Bond; (4) Moralez' complaint includes claims arising after

12   the <u>Velasco</u> settlement that are not precluded; (5) Bond was not a party to the <u>Velasco</u> action

13   and so cannot benefit from whatever preclusive effect it has; and (6) Moralez should not be

14   bound by the <u>Velasco</u> settlement because Velasco did not adequately represent Moralez'

15   interests and Moralez did not receive adequate notice of the suit.

16   **A.  Procedural Objections**

17   A motion to dismiss predicated on undisputed facts may properly invoke *res judicata*

18   as a ground for dismissal.  <u>See</u> <u>Scott v. Kuhlmann</u>, 746 F.2d 1377, 1378 (9th Cir. 1984).  In

19   ruling on a motion to dismiss under Rule 12(b)(6), district courts are generally limited to the

20   material in the pleadings;  however, the Court may take judicial notice of "matters of public

21   record" without converting the motion into one for summary judgment.  <u>See</u> Fed. R. Evid.

22   201; <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir. 2001). Court records—so

23   long as they are not noticed for the truth of disputed assertions of fact within them—fall

24   within this exception.  <u>See</u> 21B Wright et al., <u>Federal Practice & Procedure: Evidence</u>

25   § 5106.4 (2d ed. 2002).

26   Moralez points out that reasonable disputes about, for example, the scope of the

27   settlement agreement could preclude dismissal at this stage of the litigation.  She is correct,

28   but no such material disputes present themselves.   Moralez is also correct that Defendants

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    have included declarations with their motion that are not properly before the Court on a

2    motion to dismiss; accordingly, the Court will not consider those materials—nor similar

3    materials supplied by Moralez—for purposes of ruling on the motion.[1]

4    **B. Claims for Physical Injuries**

5          The Velasco Agreement explicitly excluded from its coverage "personal injury claims

6    as a result of physical injury," Velasco Judgment ¶ 9; see also Velasco Agreement ¶ 20.2.4

7    (similar language).  Moralez says that her complaint alleges "fear and shock to her nervous

8    system from nearly being run over as she passed behind cars in the path of travel to the

9    store," which she says is a "physical injury" under California law.  Opp'n at 8.

10         Perhaps, but alleging physical injury incident to a disability discrimination claim and

11   bringing a "personal injury claim" are two different things.  Cf. Ball v. C.I.R., 163 F.3d 308,

12   309 (5th Cir. 1998) (distinguishing the two types of claims); Smith v. Blue Cross Blue Shield

13   of Kan., Inc., 102 F.3d 1075, 1077-78 (10th Cir. 1996) (same).  Moralez' four causes of

14   action under various disability discrimination and public accommodation statutes are not

15   "personal injury claims," nor, if she were granted leave to amend her complaint,could the

16   Court exercise supplemental jurisdiction over such claims if all of Moralez' federal claims

17   are barred at the outset.

18   **C. Jointly Controlled Parking Lots**

19         The Velasco Agreement distinguished between parking lots that Whole Foods had an

20   obligation to alter and parking lots it was required to make a "good faith effort" to fix.

21   Velasco Agreement ¶¶ 6.7, 6.7.1, 6.8, 6.8.1.  Not surprisingly, the agreement did not require

22   Whole Foods to make changes to lots it did not have the legal authority unilaterally redesign.

23   The operative language stated that Whole Foods' obligation to fix the lots was

24         limited to those Parking Lots which Whole Foods has exclusive authority and
           control.  Each Parking Lot that is attached, affixed, joined or connected or [sic]
25         other retail or business establishments over which Whole Foods does not
           control, or which is shared by a Whole Foods Store and a Whole Foods Store's
26

27   _____

     [1] Moralez also offers a creative reading of the Northern District of California's General Order 56,
     arguing that it bars motions to dismiss until after certain discovery is complete.  The language she cites
28   ("All other discovery and proceedings are STAYED unless the assigned judge orders otherwise")
     plainly refers to discovery issues, and does not bar a defendant from  moving to dismiss on *res judicata*
     grounds.

                                                    7

United States District Court
For the Northern District of California

neighboring tenant(s), shall be deemed outside of Whole Foods Store's exclusive authority and control.

Velasco Agreement ¶ 6.7. Whole Foods was also obligated to attempt to include an ADA compliance lease term during renegotiations with any landlord.  Velasco Agreement ¶¶ 6.8, 6.8.1.

Moralez says that her complaint alleges that Defendant Bond owns the building and parking lot at issue,  Opp'n at 9 (citing FAC ¶¶ 5, 7), and in Moralez' view, such an "allegation of shared control takes the property out of the scope of the Velasco settlement agreement and thus Velasco does not bar the complaint."  Opp'n at 9-10.

Moralez' proffered distinction does not take her claims outside of the agreement so much as determine which remedy bucket they would fall into under it.  Whether the Velasco defendants agreed to make a "good faith effort" to fix the Bay Place Whole Foods parking lot or whether they were obligated to do so under the agreement, the lot–and Moralez' claims–were covered by the settlement.

### D. Velasco's Temporal Scope

Moralez next posits that even if some of her claims are barred, claims arising after the Velasco judgment was entered on February 14, 2012, are not.  She concedes that the terms of the agreement state otherwise; they purport to cover all claims arising "from December 21, 2006 through the Term of the Settlement Agreement," Velasco Judgment ¶ 1, with the "Term" separately defined as expiring thirty months after the entry of final approval–here August 14, 2014.

Whether or not ordinary preclusion principles leave unscathed claims arising after the date of a previous judgment, class-action settlements incorporated into a final judgment may explicitly release claims arising after the entry of judgment that are based on an identical factual predicate.  See Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443-44 (9th Cir. 1986); see also Hesse v. Sprint Corp., 598 F.3d 581, 590-91 (9th Cir. 2010); Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 31-32 (1st Cir. 1991) (distinguishing between preclusion and release).  If defendants could not avoid liability during a period of

1   remedial efforts in this way, their incentives to settle with a class under terms requiring such

2   changes would be nil.

3       **E.  Bond and the <u>Velasco</u> Action**

4       Whole Foods' various landlords, such as Defendant Bond, were not parties to

5   <u>Velasco</u>. Moralez says this prevents Bond from invoking <u>Velasco</u> as a ground for dismissal.

6   Opp'n at 14-17.  The Ninth Circuit case on point, <u>Reyn's Pasta Bella, LLC v. Visa USA,

7   Inc.</u>, 442 F.3d 741 (9th Cir. 2006), holds that under both preclusion and release principles, a

8   non-party to a previous class-action settlement may, in certain circumstances, invoke the

9   settlement as a bar to claims "based on the identical factual predicate as that underlying the

10  claims in the settled class-action."  <u>Id.</u> at 748 (quoting <u>Class Plaintiffs v. City of Seattle</u>, 955

11  F.2d 1268, 1287-89 (9th Cir. 1992)).

12          1. Release

13      A settlement agreement can release claims against non-parties.  <u>Reyn's Pasta Bella</u>,

14  442 F.3d at 748; <u>Class Plaintiffs</u>, 955 F.2d at 1287-89.  In <u>Reyn's Pasta Bella</u>, a class of

15  plaintiffs sued Visa and Mastercard in federal district court in New York, alleging various

16  antitrust theories involving collusion with member banks.  442 F.3d at 748.  After that case

17  settled, a class member brought suit in federal district court in California against one of the

18  member banks, arguing that the suit was not barred because the banks were not  parties to the

19  New York litigation.  The Ninth Circuit affirmed the district court's holding that the banks

20  could rely on the New York release, which expressly barred claims against the banks.  <u>Id.</u>

21  (citing <u>In re Visa Check/Mastermoney Antitrust Litigation</u>, 297 F. Supp. 2d 503, 512

22  (E.D.N.Y. 2003).

23      The Velasco settlement did not, however, by its terms bar claims against Whole

24  Foods' landlords; indeed, it did the opposite.  The Velasco Judgment confined the release to

25  claims "against Mrs. Gooch's Natural Foods Market, Inc. and Whole Foods Market

26  California, Inc., their predecessors, successors and present and former parents, partners,

27  subsidiaries and affiliates, employees, agents, assigns, representatives, and administrators."

28  Velasco Judgment ¶ 9; <u>see also</u> Velasco Agreement ¶ 20.1.1 ("Whole Foods and its present

United States District Court
For the Northern District of California

9

United States District Court
For the Northern District of California

1    and former parents and subsidiaries and each of their respective present, former or future

2    officers, directors, employees, shareholders, administrators, executors, affiliates, successors,

3    and assigns . . . .").[2]

4        And, the agreement included a "No Third Party Beneficiaries" provision, which stated

5    that "[n]othing in this Agreement, express or implied, is intended to or shall confer upon any

6    person or entity not a Party to this Agreement any right, benefit or remedy of any nature

7    whatsoever under or by reason of this Agreement."  Velasco Agreement ¶ 21.1.

8        Bond does not say anything about the third-party provision, nor does it parse the

9    language specifying the parties against which the class members were releasing their claims;

10   rather, it relies on a conclusory statement that "the release in the Velasco settlement also

11   encompassed the claims asserted against Bond."  Joinder (dkt. 21) at 2.  During the hearing

12   on this motion, counsel for Whole Foods suggested that the settlement "released the areas"

13   that Moralez' claim describes, which is true as far as it goes, but overlooks that it released

14   claims against enumerated parties based on conditions in those areas–and Bond is not among

15   the entities released.

16       Bond appears to suggest that Reyn's Pasta Bella, and a case emphasized during the

17   hearing on this motion, Green v. Ancora-Citronelle Corp., 577 F.2d 1380 (9th Cir. 1978),

18   stand for the proposition that nonparties to a release agreement–even if they are not covered

19   by the terms of the release and the settling parties had no intention of releasing third

20   parties–may rely on it so long as the claims against the nonparty rest on an identical factual

21   predicate to the released claims.

22       That theory has two problems; first, it is inconsistent with the principle that releases

23   are contracts, and the intent of the parties governs the meaning of the contract.  See, e.g.,

24   United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992);

25   see also 18A Wright et al., Federal Practice and Procedure: Jurisdiction § 4465.1 at n.17 and

26   accompanying text ("If the terms of the judgment are dictated by settlement, preclusion

27

28       [2]To the extent Moralez obliquely suggests in her papers that she was duped into substituting
     Defendant Whole Foods Market California, Inc. for Defendant Whole Foods Market, Inc., the point is
     moot because claims against the latter do fall within these provisions.

United States District Court
For the Northern District of California

1    consequences might be measured by the test that applies to all consent judgments—the intent

2    of the parties.").

3          Second, neither <u>Reyn's Pasta Bella</u> nor <u>Green</u> would have needed to reach such a

4    holding since, unlike here, the releases in those cases did by their terms express an intent to

5    release or preclude claims against the parties that later sought to rely on the settlement.  <u>See</u>

6    <u>Reyn's Pasta Bella</u>, 442 F.3d at 748 (citing <u>In re Visa Check/Mastermoney Antitrust Litig.</u>,

7    297 F. Supp. 2d at 512); <u>Green</u>, 577 F.2d at 1383 ("[I]t is clear that the parties intended the

8    stipulation of settlement and judgment entered thereon to adjudicate once and for all the

9    issues raised in that action.").

10                    2. Preclusion

11         State court judgments command the same preclusive effect in federal court that they

12   would have in the court that entered it.  28 U.S.C. § 1738; <u>In re Bybee</u>, 945 F.2d 309, 316

13   (9th Cir. 1991).  Moralez says Bond cannot rely on claim preclusion because it was not a

14   party to <u>Velasco</u> nor is it in privity with such a party.  She is correct.  <u>See, e.g.</u>, <u>Mycogen</u>

15   <u>Corp. v. Monsanto Co.</u>, 28 Cal. 4th 888, 896 (2002) ("[C]laim preclusion prevents

16   relitigation of the same cause of action in a second suit <u>between the same parties or parties in</u>

17   <u>privity with them</u>.") (emphasis added).

18         Defendant Bond argues that even if claim preclusion does require privity, issue

19   preclusion (also referred to as collateral estoppel) does not.  As a threshold matter, this

20   argument from Bond was arguably waived since it appears for the first time in Bond's reply

21   brief, after Bond relied on a release argument in its motion to dismiss joinder papers.

22         On the merits, Bond is correct that California  recognizes so-called nonmutual

23   collateral estoppel.  <u>See</u> <u>Vandenberg v. Superior Court</u>, 21 Cal. 4th 815, 828-29 (1999).

24   However, among other requirements, an issue must have been actually litigated and

25   necessarily decided on the merits in a previous proceeding before a party may invoke

26   collateral estoppel.  <u>See</u> <u>Lucido v. Superior Court</u>, 51 Cal. 3d 335, 341 (1990).

27         Though there is something of a split of authority in the California appellate courts, the

28   better reasoned line of cases holds that "a settlement which avoids trial generally does not

11

United States District Court
For the Northern District of California

1  constitute actually litigating any issues and thus prevents application of collateral estoppel."

2  Rice v. Crow, 81 Cal. App. 4th 725, 736 (Ct. App. 2000); see also Diamant v. Johnson

3  Controls Inc., 42 F. App'x 915, 916 n.2 (9th Cir. 2002) (unpublished) (citing Rice).  But see

4  Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am., 133

5  Cal. App. 4th 1319, 1333 (Ct. App. 2005) (disagreeing with Rice).  Courts may, however,

6  give collateral estoppel effect to a settlement agreement's stated intent to provide such effect.

7  Rice, 81 Cal. App. 4th at 736-37 & n.1; Diamant, 42 F. App'x at 916 n.1.

8      No such intent is evident in the Velasco agreement; rather, the agreement states under

9  a heading "No Admission of Liability" that the settlement is "no admission or concession" by

10  Whole Foods that its stores were inaccessible, Velasco Agreement ¶ 2.  Moreover, the extent

11  to which the parties intended the settlement to bar future claims was spelled out in the release

12  provisions which, as discussed above, do not cover Bond, and expressly forbid reliance on

13  the settlement agreement by third parties.

14      Accordingly, the Court DENIES IN PART the Motion to Dismiss as to claims against

15  Bond.

16      **F. Due Process and the Velasco Settlement**

17      Moralez' last set of arguments amount to a collateral attack on the Velasco settlement

18  on due process grounds.  In general, a judgment in a class suit, including a judgment based

19  on settlement of a class claim, Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373-74

20  (1996), binds members of the class.  Cooper v. Fed. Reserve Bank, 467 U.S. 867, 874

21  (1984); Hansberry v. Lee, 311 U.S. 32, 41 (1940).  Indeed, the "central purpose of each of

22  the various forms of class action is to establish a judgment that will bind not only the

23  representative parties but also all nonparticipating members of the class certified by the

24  court."  18A Wright et al., Federal Practice and Procedure § 4455, at 448 (2d ed. 2002).

25      However, for a class judgment to bind an absent class member, due process requires

26  that the absent class members receive adequate notice and representation by the class

27  representative.  Richards v. Jefferson County, Ala., 517 U.S. 793, 799-802 (1996); Hanlon v.

28  Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998); Besinga v. United States, 923 F.2d 133,

United States District Court
For the Northern District of California

137 (9th Cir. 1991). The court approving a class settlement determines in the first instance whether due process has been satisfied. E.g., Fed. R. Civ. P. 23.

The extent to which a party can collaterally attack the certifying court's finding that due process was satisfied is subject to some uncertainty in the Ninth Circuit (and elsewhere).[3] In Epstein v. MCA, Inc., 179 F.3d 641 (9th Cir. 1999) ("Epstein III"), the court held that "absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal within the state system and by direct review in the United States Supreme Court." Id. at 648.

The court went on to acknowledge the propriety of "limited collateral review" of whether the procedures followed in the prior litigation satisfied due process, which it expressly distinguished from conducting a renewed inquiry into whether representation was in fact adequate in the first proceeding:

> Due process requires that an absent class member's right to adequate representation be protected by the adoption of the appropriate procedures by the certifying court and by the courts that review its determinations; due process does not require collateral second-guessing of those determinations and that review.

Id. at 648-49.

However, in Frank v. United Airlines, Inc., 216 F.3d 845 (9th Cir. 2000), decided shortly after Epstein III, the court made no mention of Epstein III's limitation of collateral review to procedural protections. On the contrary, it conducted a searching inquiry into the class representatives' litigation conduct in the first action to determine whether it reflected adequate representation of the subset of class members who brought the second suit. The court ultimately concluded that the representation was inadequate on account of the class representatives' failure to appeal a decision that barred remedies valuable to a subset of the class members–including those who brought the second suit. Id. at 852-53; see also Gonzales v. Cassidy, 474 F.2d 67, 72 (5th Cir. 1973) (presuming de novo inquiry into substance of representation is appropriate).

_____

[3]See Woolley, Collateral Attack and the Role of Adequate Representation in Class Suits for Money Damages, 58 U. Kan. L. Rev. 917, 917-18 (2010); Wolff, Preclusion in Class Action Litigation, 105 Colum. L. Rev. 717, 803 (2005) (noting circuit split and collecting cases).

13

United States District Court
For the Northern District of California

1    Most recently, in <u>Hesse v. Sprint Corp.</u>, 598 F.3d 581, 587 (9th Cir. 2010), the court

2    engaged in <u>Epstein III</u>'s "limited collateral review" and was troubled by the absence of a

3    specific finding in the previous state-court class action that the class representative

4    adequately represented the entire class.  The Ninth Circuit proceeded to conduct its own

5    substantive inquiry into the adequacy of the prior  representation, finding it inadequate as to a

6    subset of class members who suffered an injury the class representative did not.  <u>Id.</u> at 587-

7    89.

8          Moralez argues that Velasco's representation violated due process on both adequate

9    representation and notice grounds.  As a threshold matter, <u>Epstein III</u> arguably bars all of

10   these arguments because the <u>Velasco</u> court's procedures in addressing these issues were

11   sound.  Specifically, the state court found that the settlement satisfied California Code of

12   Civil Procedure section 382, which includes an "adequate representation" component, <u>see</u>

13   <u>Linder v. Thrifty Oil Co.</u>, 23 Cal. 4th 429, 435 (2000), and that the notice provided to class

14   members satisfied due process. Velasco Judgment ¶¶ 2-6.  Under <u>Epstein III</u>, that is all that is

15   required, and Moralez' collateral attack fails.

16         On the other hand, the state court made no specific finding that Velasco adequately

17   represented patrons of leased stores, or class members alleging emotional trauma, and more

18   generally it is unclear how vigorously the Ninth Circuit will enforce <u>Epstein III</u>'s mandate.

19   In an abundance of caution, the Court will, in the alternative, dispose of Moralez's arguments

20   on their merits.

21         1.  Adequate Representation

22         Moralez says Velasco was an inadequate representative because she (1) did not

23   vigorously protect the interests of class members frequenting leased stores like the Bay Place

24   Whole Foods; (2) alleged no physical injuries like those Moralez' alleged; (3) did not

25   demand an injunction under California Health & Safety Code sections 19953-19959, which

26   requires compliance within 90 days of discovery, and (4) was overcompensated relative to

27   the class.

28

**United States District Court**
For the Northern District of California

1    When class representation is addressed at the certification stage,  adequacy turns on

2    two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest

3    with other class members, and (2) whether the named parties and their counsel will prosecute

4    the action vigorously on behalf of the class.  See Hanlon, 150 F.3d at 1020.

5    Due process does not require that the class representative suffer exactly the same type

6    and degree of injury as every class member.  E.g., Evon v Law Offices of Sidney Mitchell,

7    --- F.3d ---, No. 10-16615, 2012 WL 3104620, at *11-12 (9th Cir. 2012) (representation

8    adequate though class member could not recover certain types of damages potentially

9    available to class members); Walters v. Reno, 145 F.3d 1032, 1046 (9th Cir. 1998).  Factual

10   differences in the underlying claims of the class representative and class member will not

11   preclude a finding of adequate representation if the class representative demonstrates an

12   ability to vigorously pursue the claims of the class.  See Walters, 145 F.3d at 1046.

13   Moralez  says that because Velasco did not secure a settlement that required leased

14   Whole Foods stores to alter their facilities, she did not adequately represent patrons of leased

15   stores.  But Velasco could not have achieved a settlement that required leased stores to make

16   changes they had no legal authority to make.  And, because the settlement did not release

17   claims against landlords, Velasco did not compromise the ability of class members like

18   Moralez to pursue such relief through actions like this one.  Accordingly, Velasco's

19   representation of patrons of leased stores was adequate.

20   Though Moralez remains free to assert personal injury claims under the terms of the

21   Velasco agreement, she says that because Velasco's complaint did not allege any such

22   injuries to Velacso, she was an inadequate class representative because she may not have

23   pressed for additional recovery under the released claims that class members with such

24   injuries may have been eligible to receive.  Cf. Molski v. Gleich, 318 F.3d 937, 955 (9th Cir.

25   2003), overruled on other grounds, Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir.

26   2010) (en banc).

27   The Velasco complaint is inconclusive as to any danger that Velasco may have

28   personally encountered as a result of the alleged parking lot deficiencies.  But even if she

United States District Court

For the Northern District of California

1   actually suffered no such injuries, nothing about her representation suggests it compromised

2   her ability to vigorously pursue the interests of class members who did.  Velasco secured

3   relief that both compensated class members for, and required the defendants to address,

4   precisely the situation that led to Moralez' alleged fright. And, as discussed above, Velasco

5   preserved Moralez' ability to seek compensation for her emotional trauma through a personal

6   injury claim.  Cf. Molski, 318 F.3d at 957-58 (Graber, J. concurring).

7       Moralez also questions more generally whether the relief secured represented

8   vigorous representation; she points out that certain California statutory provisions[4] entitle

9   class members to a "right of remediation within 90 days of discovery," yet Velasco's

10  settlement provided 30 months for defendants to address the problems.  Also, in Moralez'

11  view, Velasco herself was paid too much ($5,000, Velasco Judgment ¶ 12), and the

12  attorneys' fees fund ($250,000, Velasco Judgment ¶ 12) was too large relative to the class

13  compensation fund ($500,000, Velasco Agreement ¶ 8).

14      Velasco secured injunctive relief requiring substantial alteration to all thirty-three

15  California Whole Foods stores, at undoubtedly significant expense that Moralez' numbers do

16  not account for.  This Court agrees with the certifying court that the settlement appears fair,

17  and nothing suggests that Moralez could or would secure–apart from her own incentive

18  award and attorneys' fees–any different or better resolution of the claims while avoiding the

19  uncertainties of trial.  Velasco's representation was adequate.

20          2. Notice

21      Moralez' notice argument is limited to the bare assertion that she had no actual notice

22  of the Velasco settlement.  Due process does not require that a class member actually receive

23  notice, so long as the notice afforded was "the best notice practicable under the

24  circumstances."  Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1486 (D.C. Cir. 1992)

25  (quoting Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 173)); see also Reppert v. Marvin

26  Lumber & Cedar Co., 359 F.3d 53, 56-57 (1st Cir. 2004).  Moralez does not point out any

27  ───────────────────
28  [4]That Velasco did not bring a claim for injunctive relief under these sections is of no moment
    to the preclusion and release analysis discussed above; those claims–to the extent asserted against
    Whole Foods–were covered by the language of the release and are also precluded because they could
    have been brought in the Velasco action.

1   shortcomings in the <u>Velasco</u> notice scheme or suggest what could or should have been done

2   differently.  The notice provided to class members satisfied due process.

3   **CONCLUSION**

4        The Court GRANTS IN PART Whole Foods' Motion to Dismiss as to claims against

5   Whole Foods but DENIES IN PART as to claims against Bond.

8   Dated: September 24, 2012

    _____
    CHARLES  R. BREYER
    UNITED STATES DISTRICT JUDGE